1
2
3
4

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

5
6
7
8
9
10
11

| | |
|---|---|
| FRED JACKSON, | ) No. C 07-00961 SBA (PR) |
| | ) |
| Plaintiff, | ) |
| | ) **ORDER GRANTING IN PART** |
| v. | ) **DEFENDANTS' MOTION FOR** |
| | ) **SUMMARY JUDGMENT AND** |
| ROBERT BOWMAN, et al., | ) **REMANDING STATE LAW CLAIMS TO** |
| | ) **STATE COURT** |
| Defendants. | ) |
| | ) (Docket Nos. 31, 38) |
| | ) |
| _____ | ) |

**United States District Court**
**For the Northern District of California**

## INTRODUCTION

Plaintiff Fred Jackson, a California prisoner currently incarcerated at Kern Valley State Prison, originally filed this pro se civil action in the Monterey County Superior Court alleging various claims stemming from his incarceration at Salinas Valley State Prison (SVSP). Defendants removed the action to federal court on the ground that certain of his claims arise under 42 U.S.C. § 1983. His claims arise from the treatment of a finger injury in November 2004. The pleadings allege a claim for deliberate indifference to his serious medical needs, as well as claims under state law. Plaintiff named the following as Defendants: SVSP Health Care Manager Dr. Dudley Lee and SVSP Physicians Drs. Robert Bowman and Navneet Adya.

Before the Court is Defendants' motion for summary judgment (Docket No. 38). For the reasons outlined below, the Court GRANTS the motion for summary judgment as to the deliberate indifference claim and remands Plaintiff's remaining state law claims to state court. The Court also will address Plaintiff's pending "Motion to Compel Response" (Docket No. 31), in which he requests the production of responses to certain interrogatories.

## FACTUAL BACKGROUND

In support of their motion for summary judgment, Defendants submit declarations and documentary evidence. In support of his opposition, Plaintiff submits declarations and documentary

United States District Court
For the Northern District of California

1    evidence.  The following facts are undisputed, unless otherwise noted.

2         Plaintiff injured his finger on November 16, 2004.  (Compl. at 3.)  On November 17, 2004,

3    Plaintiff was examined by medical staff at SVSP at which time an x-ray was taken.  (Id.)  Defendant

4    Bowman allegedly informed Plaintiff that his finger was "not fractured."  (Id.)  Bowman disputes

5    this fact and claims that he "became aware of plaintiff Jackson's finger injury for the first time on

6    March 24, 2005 when [he] reviewed [Plaintiff's] inmate appeal complaint (602)."  (Bowman Decl. ¶

7    3.)[1]

8    Following the November 17, 2004 examination, Plaintiff continued to feel pain in his finger, which

9    began to swell and look "deformed."  (Compl. at 3.)

10        On November 23, 2004, Dr. Hosohama from Salinas Valley Radiologists, Inc. completed a

11   report on the x-rays, noting an "[a]vulsion fracture at the base of the fourth distal phalanx."  (Yu

12   Decl., Ex. A at SVSP004.)  SVSP received a copy of this report on December 1, 2004.  (Id.)

13        On January 16, 2005, Plaintiff made a health care request for a complete physical and

14   medication refill in which he referenced the November 2004 injury and his December 1, 2004

15   notification of a "ducat."[2]  (Id. at SVSP005.)  In response to this request, SVSP medical staff

16   prescribed Tylenol on February 8, 2005.  (Id. at SVSP007.)  Plaintiff claims that he was informed by

17   SVSP Staff Medical Technician Ms. Hopkins on this occasion that his finger was broken.

18   (Compl. at 3.)  She told Plaintiff that medical staff had "forgot to treat" his injury following a

19   December 1, 2004 notification of diagnostic test results.  (Id.)

20        Also on February 8, 2005, Plaintiff filed a 602 inmate appeal form, SVSP 05-00672,

21   complaining about the course of treatment recommended by SVSP staff and seeking monetary

22   compensation for the alleged negligence of unnamed physicians who failed to properly diagnosis

23

24   ─────────────────

25        [1]Attached to Plaintiff's opposition are Defendants' responses to his interrogatories, which
     includes Defendant Bowman's response --  when he was asked "Did you tell plaintiff on November
26   17, 2004 after viewing x-rays of his finger that the finger was not broken and no treatment was
     necessary?" -- as follows: "Due to the passage of time, I do not recall.  Plaintiff's medical record
27   reveals that Nurse Wendling, R.N. and Dr. Gary Haffner treated plaintiff on November 17, 2004 and
     referred plaintiff for an x-ray on November 17, 2004."  (Opp'n, Ex. F, Apr. 24, 2008 Letter to Pl. at
28   2.)  There is no evidence of Dr. Bowman treating or seeing plaintiff on November 17, 2004.

        [2]  "Ducat" refers to a formal notification to a prisoner of a scheduled health appointment.

United States District Court
For the Northern District of California

and treat his broken finger.  (Yu Decl., Ex. B at FJ1011.)  Plaintiff stated:  "[Medical staff] x-rayed my finger and told me it was not fractured and no further treatment was necessary even despite the fact my finger was bent and disfigured and I was in severe pain dayly [sic]."  (Id.)

On March 16, 2005, Plaintiff was seen by SVSP medical staff in response to his request for results of x-rays.  (Id., Ex. A at SVSP006.)  The attending medical physician, Dr. Bey, made a request for a specialist consultation on Plaintiff's injured finger.  (Id. at SVSP007.)  Defendant Bowman denied this request on March 23, 2005 "on the grounds that he believed that the [SVSP] Medical Clinic could treat Plaintiff."[3]  (Opp'n, Ex. F, Apr. 24, 2008 Letter to Pl. at 2.)

In response to the 602 appeal, Plaintiff was examined by Defendants Adya and Bowman on March 24, 2005.  (Yu Decl., Ex. A at SVSP008; Ex. B at FJ1012.)  Defendant Adya requested additional x-rays and prescribed pain medication.  (Yu Decl., Ex. A at SVSP008.)  Defendant Bowman advised Plaintiff that there was "no significant functional disability" and "no specific therapy indicated."  (Id. at SVSP013.)  Defendant Bowman informed Plaintiff that he would be monitored regularly in clinic to ensure that his finger was healing.  (Id., Ex. B at FJ1008, FJ1012.)  Defendant Bowman also advised Plaintiff that monetary compensation was outside the scope of the appeals process.  (Id.)  Defendant Bowman thereby concluded the informal first level 602 appeal process.  (Id.)

On March 25, 2005, Plaintiff was again seen by Defendant Adya, who prescribed Ibuprofen in response to Plaintiff's complaints of pain.  (Adya Decl ¶ 3.)  On or around this date, Plaintiff had a telephone conversation with Defendant Lee who said that he would address Plaintiff's concerns regarding treatment of his finger.  (Pl.'s Aff., Ex. D ¶ 1.)[4]

---

[3]  Plaintiff argues that contrary to Defendant Bowman's claim that he only became aware of Plaintiff's injury on March 24, 2005, "[Defendant] Bowman had become aware [of] Plaintiff's broken finger before March 24, 2005 . . . when he denied Dr. Bey's request[] [for] an outside consultation for Plaintiff's fracture."  (Opp'n at 22.)  The record shows that Defendant Bowman denied Dr. Bey's request for an outside consultation on March 23, 2005.  (Opp'n, Ex. F, Apr. 24, 2008 Letter to Pl. at 2.)  Therefore, Defendant Bowman should have been aware of Plaintiff's broken finger on March 23, 2005.

[4]  Defendant Lee does not address this phone call either in his declaration or in his response to interrogatories, stating only that his "involvement with the care of plaintiff Fred Jackson is

3

United States District Court
For the Northern District of California

1    On March 30, 2005, Plaintiff appealed the claims in his 602 appeal to the second formal level

2  of review.  He alleged claims for  "medical negligence" and "a clear pattern of deliberate

3  indifference" for failing to properly diagnose and provide treatment.  (Yu Decl., Ex. B at FJ1008,

4  FJ1013.)

5    On April 4, 2005, SVSP received a copy of a report regarding x-rays taken of his finger on

6  March 24, 2005.  (Id. at SVSP016.)  Dr. Staunton from Salinas Valley Radiologists, Inc. examined

7  the x-rays and reported his findings on March 31, 2005.  Dr. Staunton's report indicated some

8  uncertainty due to the view provided of the injury as seen on the x-rays.  (Id.)  However, he noted

9  that the fracture line "is no longer seen" and "[t]he injury appears healed."  (Id.)

10    On April 11, 2005, Plaintiff was seen by Defendant Adya, who noted Plaintiff's allergy to

11  Ibuprofen in the medical record.  (Yu Decl., Ex. A at SVSP019.)  Defendant Adya also updated

12  Plaintiff's prescriptions accordingly, and referred him to Defendant Bowman.[5]  (Id.)

13    On April 12, 2005, Defendant Bowman examined Plaintiff in response to the referral.  (Id. at

14  SVSP023.)  Defendant Bowman examined the Plaintiff's finger for mobility and noted the

15  following:  "Fracture has healed satisfactorily.  There is no reason to expect him to continue to

16  [complain of] pain or have any functional disability.  There is nothing more to be done for him."

17  (Id.)

18    Over the next few weeks, Plaintiff continued to seek treatment for his finger.  On April 14,

19  2005, Defendant Adya examined Plaintiff and diagnosed his finger as "healed."  (Id. at SVSP024.)

20    On April 19, 2005, Defendant Bowman examined Plaintiff and noted, "Nothing specific to be

21  done."  (Id. at SVSP025.)  While not reflected in the medical record, Plaintiff claims that Defendant

22  _____

23  accurately reflected in the attached medical records."  (Lee Decl. ¶ 3.)  The medical record does not
   indicate any communication between Plaintiff and Defendant Lee beyond the results of the 602
24  second level appeal decision.  (Yu Decl., Ex. A.)  When asked when he became aware of Plaintiff's
   injury, Defendant Lee answered "May 9, 2005."  (Opp'n, Ex. F, Lee's Response to Interrogs. at 2.)
25  In their response to Plaintiff's "Motion to Compel Response," Defendants Bowman and Lee posit
   that they have "no independent recollection" of Plaintiff's medical history.  (Def.'s Opp'n to Pl.'s
26  Mot. at 5.)

27    [5]  Plaintiff contends that no treatment was offered by Defendant Adya on April 11, 2005.
28  (Compl. at 4.)

4

Bowman verbally discussed his treatment options, including a possible surgical remedy. (Pl.'s Aff. Ex. C ¶ 6.)[6]

On April 20, 2005, a third set of x-rays of Plaintiff's finger were analyzed by Dr. Villalobos from Salinas Valley Radiologists, Inc. who confirmed Dr. Staunton's earlier findings that Plaintiff's injury was "[u]nchanged since the previous study." (Yu Decl., Ex. A at SVSP027.)

On May 9, 2005, Defendants Bowman and Lee denied Plaintiff's 602 appeal at the second level of review. (Yu Decl., Ex. B at FJ1008-09.) In the response Defendants Bowman and Lee wrote: "Documentation reveals that the fracture has healed satisfactorily. No further treatment and/or recommendations are indicated." (Id. at FJ1008.)

On August 19, 2005, Chief of the Inmate Appeals Branch N. Grannis denied Plaintiff's appeal at the Director's level, thus exhausting Plaintiff's administrative remedies. (Id. at FJ1007.) According to the Director's Level Appeal Decision, Grannis declined to modify the treatment, stating: "The appellant [Plaintiff] has been examined by licensed physicians for the complaints that he describes. He has been treated in accordance with the professional judgments of the physicians. According to the treating physicians, the appellant's finger has healed satisfactorily." (Id.)

On September 20, 2005, Plaintiff was examined by orthopedic surgeon, Dr. Pompan, who found that "surgery [was] not indicated," and the finger was "not [an] operative problem." (Id. SVSP036.)

**PROCEDURAL BACKGROUND**

Plaintiff commenced this action by filing a complaint in the Monterey County Superior Court on January 10, 2007. On February 15, 2007, Defendants Bowman and Lee removed this case to federal court on the ground that Plaintiff alleged a violation of his civil rights under federal law.

At the time of removal from state court, service of process was made upon Defendants Bowman and Lee only. On December 26, 2007, Plaintiff filed a request for an entry of default

---

[6] Defendant Bowman does not address this conversation directly in his declaration. Rather, in response to Plaintiff's interrogatory regarding the common medical treatment for a broken finger, Defendant Bowman responded with: "Soft tissue injuries are generally treated by rest, ice, immobilization, prescription of anti-inflammatory medication." When asked specifically about whether surgical options are a common treatment, Defendant Bowman stated, "Not to my knowledge." (Opp'n, Ex. F, Bowman's Response to Interrogs. at 3.)

**United States District Court**
For the Northern District of California

1  judgment citing Defendants Bowman and Lee's failure to file either an answer or a dispositive

2  motion.  On January 4, 2008, the Clerk of the Court filed a notice of entry of default as to

3  Defendants Bowman and Lee.  Defendants filed a motion to set aside the entry of default on

4  February 26, 2008.  In an Order dated March 4, 2008, the Court granted Defendants Bowman and

5  Lee's motion to set aside the default.

6      On September 18, 2008, the Court issued an Order of Service.  The Court found that Plaintiff

7  stated a cognizable claim of deliberate indifference to serious medical needs against Defendants

8  Bowman and Adya, as well as a cognizable claim for supervisory liability against Defendant Lee.

9  The Court set a briefing schedule and ordered for a summons to be served by the U.S. Marshall on

10  Defendant Adya.  Summons was issued on September 19, 2008.  It does not appear from the record

11  that service was completed on Defendant Adya.  However, on January 1, 2009, Defendants Lee,

12  Bowman and Adya filed the instant motion for summary judgment, which states that Defendant

13  Adya "waiving service."  (Def.'s Mot. Summ. J. at 1.)

14      In their motion for summary judgment, Defendants contend that Plaintiff has failed to

15  demonstrate that they acted with deliberate indifference to his serious medical needs in violation of

16  the Eighth Amendment prohibition against cruel and unusual punishment.  On March 10, 2009,

17  Plaintiff filed his opposition.  Defendants filed their reply on June 15, 2009.  Plaintiff filed a

18  response to Defendants' reply on June 29, 2009.

19      Also before the Court is Plaintiff's "Motion to Compel Response," which was filed on

20  September 19, 2008.  In an Order dated May 29, 2009, the Court directed Defendants to file a

21  response to the motion to compel, which they did on June 17, 2009.  After being granted an

22  extension of time, Plaintiff filed his reply to Defendants' response on July 20, 2009.

23  <u>**LEGAL STANDARDS**</u>

24  **I.    <u>Summary Judgment</u>**

25      Summary judgment is properly granted when no genuine and disputed issues of material fact

26  remain and when, viewing the evidence most favorably to the non-moving party, the movant is

27  clearly entitled to prevail as a matter of law.  Fed. R. Civ. P. 56; <u>Celotex Corp. v. Catrett</u>, 477 U.S.

28  317, 322-23 (1986); <u>Eisenberg v. Ins. Co. of N. Am.</u>, 815 F.2d 1285, 1288-89 (9th Cir. 1987).

6

The moving party bears the burden of showing that there is no material factual dispute. Therefore, the Court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material.  Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289.  The Court must draw all reasonable inference in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).  A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence.  Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case.  The substantive law will identify which facts are material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of production by either of two methods:

> The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial.

Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc., 210 F.3d 1099, 1106 (9th Cir. 2000).

If the moving party discharges its burden by showing an absence of evidence to support an essential element of a claim or defense, it is not required to produce evidence showing the absence of a material fact on such issues, or to support its motion with evidence negating the non-moving party's claim.  Id.; see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 885 (1990); Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991).  If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the non-moving party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists."  Bhan, 929 F.2d at 1409.

If the moving party discharges its burden by negating an essential element of the non-moving party's claim or defense, it must produce affirmative evidence of such negation.  Nissan, 210 F.3d at

7

**United States District Court**
For the Northern District of California

1105.  If the moving party produces such evidence, the burden then shifts to the non-moving party to produce specific evidence to show that a dispute of material fact exists.  Id.

If the moving party does not meet its initial burden of production by either method, the non-moving party is under no obligation to offer any evidence in support of its opposition.  Id. This is true even though the non-moving party bears the ultimate burden of persuasion at trial.  Id. at 1107.

It is not the task of the district court to scour the record in search of a genuine issue of triable fact.  Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996).  The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment.  Id.  If the nonmoving party fails to do so, the district court may properly grant summary judgment in favor of the moving party.  See id.; see, e.g., Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1028-29 (9th Cir. 2001) (even if there is evidence in the court file which creates a genuine issue of material fact, a district court may grant summary judgment if the opposing papers do not include or conveniently refer to that evidence).  Although the district court has discretion to consider materials in the court file not referenced in the opposing papers, it need not do so.  Id. at 1029.  "The district court need not examine the entire file for evidence establishing a genuine issue of fact."  Id. at 1031.

## II.      Deliberate Indifference to Serious Medical Needs

Deliberate indifference to serious medical needs violates the Eighth Amendment's prohibition against cruel and unusual punishment.  See Estelle v. Gamble, 429 U.S. 97, 104 (1976); McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).  The analysis of a claim of "deliberate indifference" to serious medical needs involves an examination of two elements: (1) the existence of a prisoner's serious medical needs and (2) the establishment of a deliberately indifferent response by the defendants to those needs.  McGuckin, 974 F.2d at 1059.

A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "wanton infliction of unnecessary pain."  Id. (citing Estelle, 429 U.S. at 104).  The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of

indications that a prisoner has a serious need for medical treatment.  Id. at 1059-60 (citing Wood v. Housewright, 900 F.2d 1332, 1337-41 (9th Cir. 1990)).

A prison official is deliberately indifferent if he or she knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. Farmer v. Brennan, 511 U.S. 825, 837 (1994).  The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but he "must also draw the inference."  Id.  If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.  Gibson v. County of Washoe, 290 F.3d 1175, 1188 (9th Cir. 2002).

In order for deliberate indifference to be established, therefore, there must be a purposeful act or failure to act on the part of the defendant and a resulting harm.  See McGuckin, 974 F.2d at 1060; Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).  Such indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown in the way in which prison officials provide medical care.  See McGuckin, 974 F.2d at 1062.

"A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim."  Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).  Similarly, a showing of nothing more than a difference of medical opinion as to the need to pursue one course of treatment over another is insufficient, as a matter of law, to establish deliberate indifference.  See Franklin v. Oregon State Welfare Div., 662 F.2d 1337, 1344 (9th Cir. 1981); see also Toguchi v. Chung, 391 F.3d 1051, 1059-60 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Mayfield v. Craven, 433 F.2d 873, 874 (9th Cir. 1970).  In order to prevail on a claim involving choices between alternative courses of treatment, a plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that they chose this course in conscious disregard of an excessive risk to the plaintiff's health.  See Toguchi, 391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (citing Farmer, 551 U.S. at 837), cert. denied, 519 U.S. 1029 (1996).

Neither negligence nor gross negligence is actionable under § 1983 in the prison context. See Farmer 511 U.S. at 825-36, n.4 (1994); Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990) (gross negligence insufficient to state claim for denial of medical needs to prisoner). Furthermore, a claim of medical malpractice is insufficient to make out a violation of the Eighth Amendment.  See Toguchi, 391 F.3d at 1060-61; Franklin, 662 F.2d at 1344.

A supervisor may be liable for deliberate indifference upon a showing of (1) personal involvement in the Eighth Amendment violation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the violation.  Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991).  However, a supervisor cannot be held liable in the absence of an underlying constitutional violation.  Jackson v. City of Bremerton, 268 F.3d 646, 654 (9th Cir. 2001).  Also, a supervisor therefore generally "is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them."  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

## DISCUSSION

**I.    The Existence of Plaintiff's Serious Medical Need**

The threshold question in a claim for deliberate indifference to serious medical needs is whether the plaintiff suffered from a serious medical need.  McGuckin, 974 F.2d at 1059. Defendants' fail to address the issue of whether Plaintiff's injury to his finger amounts to a serious medical need.

The Court must construe the evidence and the inferences to be drawn therefrom in a light most favorable to the nonmoving party.  TW Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987).  The uncontested portions of Plaintiff's affidavits, combined with a medical record indicating ongoing complaints of pain, support a conclusion and inference that his condition significantly affected his daily activities.  (Pl.'s Aff., Ex. C.)  Therefore, the Court assumes without deciding that Plaintiff's injury to his finger amounted to a serious medical need.

**II.    The Establishment of Deliberately Indifferent Response by Defendants to Plaintiff's Serious Medical Need**

Plaintiff argues that the course of treatment made available to him (i.e., pain medications,

United States District Court
For the Northern District of California

1   multiple x-rays, and specialist review) was inadequate.  (Pl.'s Opp'n at 1.)  Specifically, he alleges

2   that Defendants acted with deliberate indifference when:  (1) Defendant Bowman initially

3   misdiagnosed the finger injury, refused Plaintiff's referral to a specialist, and failed to provide

4   corrective surgery; (2) Defendant Adya prescribed Ibuprofen, to which Plaintiff is allergic; and

5   (3) Defendant Lee failed to follow-through as a supervisor by making sure Plaintiff was receiving

6   treatment for his finger injury.  Defendants contend that Plaintiff has failed to show that they

7   deliberately disregarded a severe risk of harm arising from Plaintiff's injury  during the course of

8   their evaluations and treatment.  Defendants assert that they took reasonable and prompt steps to

9   address Plaintiff's complaints of pain and treated him consistently with appropriate medical

10  standards.  See Farmer, 511 U.S. at 837.

11       In order to prevail on a claim of deliberate indifference, Plaintiff must show that Defendants

12  knew he faced substantial risk of serious harm and failed to take reasonable steps to abate it.  See

13  Farmer, 511 U.S. at 837.  In cases involving choices between alternative courses of treatment,

14  Plaintiff must show that the course of treatment made available to him was medically unacceptable

15  under the circumstances and was chosen in conscious disregard of an excessive risk to his health.

16  See Toguchi, 391 F.3d at 1058.  As further discussed below, the record shows that Plaintiff was

17  examined for his finger injury at least 16 occasions by several SVSP medical staff members, who

18  confirmed their findings with an outside radiologist, between November, 2004 and November, 2006.

19  During these visits, Plaintiff was examined, frequently x-rayed, and given refills or adjustments on

20  his pain medication.  The progress notes for these visits indicate that Plaintiff did not suffer any

21  further substantial injury to his finger, and that he was given constant and consistent care by the

22  medical staff.

23       The Court finds that Plaintiff offers no evidence to suggest that the course of treatment was

24  medically unacceptable under these circumstances or chosen in conscious disregard of an excessive

25  risk to Plaintiff's health.  Plaintiff has failed to raise a triable issue of fact that his complaints of pain

26  and disfigurement, or his request for corrective surgery, necessitated any further treatment than what

27  he received.

28       **A.**      **Defendant Bowman**

**United States District Court**
For the Northern District of California

1    Plaintiff alleges that Defendant Bowman acted with deliberate indifference to his serious

2    medical needs because he failed to properly diagnosis Plaintiff's initial injury.  Plaintiff further

3    alleges that once Defendant Bowman knew of the injury, he failed to properly treat that injury in a

4    timely manner.  Finally, Plaintiff alleges that Defendant Bowman improperly denied Plaintiff's

5    request for corrective surgery and specialist consultation referral.  These claims fail to survive

6    summary judgment.

7    The medical records confirm that Defendant Bowman first examined patient on March 24,

8    2005.  Plaintiff states that the record here is incomplete, and that Defendant Bowman was the

9    physician who improperly diagnosed his finger as "not fractured" on November 17, 2004.  (Compl.

10   at 3.)  Further, it is undisputed that Defendant Bowman denied Plaintiff's referral to a specialist on

11   March 23, 2005.  (Opp'n at 22.)  Defendant Bowman also was the physician who responded to

12   Plaintiff's 602 appeal by examining patient on March 24, 2005; however, he denied Plaintiff's appeal

13   at the second level of review on May 9, 2005.

14   Nevertheless, Plaintiff fails to show evidence to support his claim that Defendant Bowman

15   acted with deliberate indifference because he fails to raise triable issues of material fact that:

16   (1) Defendant Bowman's misdiagnosis that Plaintiff's finger was not fractured amounted to more

17   than negligence; (2) once Defendant Bowman was made aware of the injury he was delayed in

18   treating Plaintiff, and Plaintiff's complaints of pain during the delay, required surgery or any further

19   treatment than what he received from the medical staff; and (3) Defendant Bowman knew that there

20   was a substantial risk that Plaintiff's condition would worsen without receiving a specialist

21   consultation.

22   First, assuming arguendo that Defendant Bowman examined Plaintiff on November 17, 2004,

23   there is no evidence suggesting that he acted with deliberate indifference on that date.  At best,

24   Defendant Bowman's alleged initial misdiagnosis of Plaintiff's broken finger amounts to negligence,

25   which does not rise to the level of deliberate indifference.  Estelle, 429 U.S. at 106.

26   Second, Plaintiff complains that there was a substantial delay between when SVSP received

27   the x-ray report showing the fracture on December 1, 2004, and when Plaintiff was informed of his

28   fracture on February 8, 2005.  However, Plaintiff fails to support this allegation with evidence that

1    Defendant Bowman was aware of this delay.  The absence of such evidence is fatal to his claim for

2    deliberate indifference under the Eighth Amendment.  See Gibson, 290 F.3d at 1188.  Moreover, the

3    mere delay in treating Plaintiff's broken finger under the circumstances presented would at most

4    amount to negligence and is insufficient to sustain a violation of the Eighth Amendment.  See

5    Toguchi, 391 F.3d at 1060-61; see, e.g., Frost v. Agnos, 152 F.3d 1124, 1130 (9th Cir. 1998)

6    (finding no merit in claims stemming from alleged delays in administering pain medication, treating

7    broken nose and providing replacement crutch, because claims did not amount to more than

8    negligence).

9         With regard to the course of treatment after Defendant Bowman was made aware of the

10   injury, he states:  "On March 24, 2005, I . . . evaluated plaintiff Jackson's finger.  I did not find any

11   significant functional disability.  Consequently, I did not order any specific therapy.  Subsequent to

12   this appointment, I discovered that plaintiff Jackson's fracture had healed by March 24, 2005."

13   (Bowman Decl. ¶¶ 4-5.)  Once the finger had healed, Plaintiff was no longer facing a substantial risk

14   of serious harm, and Defendant Bowman's choice to not pursue specific therapy cannot be

15   considered deliberate indifference.  See Farmer, 511 U.S. at 837.  Therefore, Plaintiff has failed to

16   raise a triable issue of fact that Defendant Bowman failed to properly treat the injury once he

17   became aware, because the medical record indicates that at the date of treatment the injury had

18   healed.

19        Moreover, Plaintiff fails to presents any evidence that his complaints of pain necessitated any

20   further treatment than what he received from SVSP staff.  Plaintiff states that during his March 24,

21   2005 examination Defendant Bowman informed him that there are "treatments that can be performed

22   on [Plaintiff's] finger that can correct the disfigurement (deformity) such as 'being re-broken, putting

23   a metal pin in Plaintiff's finger for [eight] weeks which is a common procedure done by doctors in

24   the community."  (Pl.'s Aff. Ex. E ¶ 4.)  However, Defendants argue that Dr. Pompan's analysis of

25   the finger as non-operative supports their decision not to provide Plaintiff corrective surgery.  (Yu

26   Decl., Ex. A at SVSP036.)

27        Plaintiff's medical records establish that Plaintiff was cared for by SVSP staff, who regularly

28   monitored Plaintiff's complaints and provided appropriate care.  Plaintiff argues that the course of

treatment made available to him (i.e. pain medication, movement and x-ray analysis) was unacceptable and equates these efforts to "no treatment." (Compl. at 4.)  In order to prevail on a claim involving choices between alternative courses of treatment, Plaintiff must show that the course of treatment was medically unacceptable under the circumstances and the course was chosen in conscious disregard of an excessive risk to Plaintiff's health.  See Toguchi, 391 F.3d at 1058.  Here, Plaintiff provides no evidence to that the course of treatment he received by Defendants was medically unacceptable or chosen in conscious disregard of an excessive risk to his health.  Plaintiff has failed to raise a triable issue of fact that his injury necessitated corrective surgery, or any treatment beyond that which he received.

Finally, Defendant Bowman's refusal to provide a specialist consultation to Plaintiff on March 23, 2005 was not deliberate indifference in the circumstances of this case because the treatment Plaintiff received in lieu of specialist consultation was reasonable.  See Wood, 900 F.2d at 1335.  Plaintiff has failed to show that the denial of consultation resulted in substantial harm.  Had Defendant Bowman known at the time of denying surgery and specialist consultation that Plaintiff's finger required emergency treatment, or that there was a substantial risk that Plaintiff's condition would worsen without receiving surgery or specialist consultation, such a delay could show deliberate indifference.  However, there is no evidence that Plaintiff's injury at that time required emergency treatment or that there was a substantial risk that his condition would worsen.

In sum, while there is no dispute that there was a mistake with regards to Plaintiff's initial diagnosis, any alleged misdiagnosis by Defendant Bowman only amounts to negligence.  Plaintiff has failed to create a genuine dispute of fact regarding whether, at the time of misdiagnosis, Defendant Bowman actually knew of the existence of Plaintiff's serious medical need and acted with deliberate indifference in failing to correctly diagnose the broken finger.  While there may have been a minor delay in treating the injury due to the initial misdiagnosis, there is no evidence to demonstrate any specific awareness that would elevate that delay in treatment beyond  negligence to the level of deliberate indifference.  Finally, there is no genuine issue of disputed fact that, at the time Defendant Bowman denied the referral for specialist consultation, there was a substantial risk that condition would worsen without receiving an immediate specialist consultation, or that

14

**United States District Court**
For the Northern District of California

1    Plaintiff's complaints of pain necessitated surgery or any further treatment than what he received

2    from SVSP medical staff.  Accordingly, there is no genuine dispute of material fact as to whether

3    Defendant Bowman acted with deliberate indifference to Plaintiff's serious medical needs based on

4    his actions outlined above.

5         **B.      Defendant Adya**

6         Plaintiff alleges Defendant Adya acted with deliberate indifference to his serious medical

7    needs by prescribing him Ibuprofen after having been informed that he was allergic to that

8    medication.  (Pl.'s Aff. Ex. B ¶ 1.)  Defendant Adya acknowledges prescribing Ibuprofen to Plaintiff

9    on March 24, 2005, but also notes that x-rays reveal the injury had healed at that time.  (Adya Decl.

10   ¶¶ 3-4.)  On April 11, 2005, during a follow-up appointment, Defendant Adya noted Plaintiff's

11   allergy to Ibuprofen, and changed the pain medication prescription to acetaminophen.  (Yu. Decl.,

12   Ex. A at SVSP019.)

13        As a threshold matter, the Court notes Plaintiff's assertion that Defendant Adya ignored his

14   medication allergy first appears in Plaintiff's opposition.  This claim is not alleged in the complaint

15   nor was it raised at any stage of his 602 appeal.  Indeed, prior to asserting this claim in his

16   opposition, Plaintiff had claimed that "no treatment" was provided by Defendant Adya.  (Compl. at

17   4.)  On these grounds alone, Plaintiff's new claim fails.  But even if the Court were to consider the

18   claim on the merits, it still fails to present viable claim for deliberate indifference to serious medical

19   needs.

20        As Defendants point out, Plaintiff's allergy to medication appears in the medical record only

21   sporadically, which undermines Plaintiff's contention that Defendant Adya was aware of Plaintiff's

22   medication allergy.  (Reply at 2.)  However, even if Defendant Adya were aware of Plaintiff's

23   allergy, his actions of allegedly ignoring it and prescribing Ibuprofen simply resulted in the delayed

24   treatment of Plaintiff's broken finger because Defendant Adya eventually prescribed another pain

25   medication.  Plaintiff has not presented evidence to support the inference that Defendant Adya's

26   initial error in prescribing Ibuprofen, which led to Plaintiff's delay in receiving pain medication, was

27   because of Defendant Adya's deliberate indifference to Plaintiff's serious medical needs.  Instead, the

28   Court again finds that Plaintiff's allegations do not rise beyond the level of negligence.  <u>See</u>

United States District Court
For the Northern District of California

O'Loughlin v. Doe, 920 F.2d 614, 617 (9th Cir. 1990) (repeatedly failing to satisfy requests for aspirins and antacids to alleviate headaches, nausea and pain is not a constitutional violation; isolated occurrences of neglect may constitute grounds for medical malpractice but do not rise to level of unnecessary and wanton infliction of pain); see also McGuckin, 974 F.2d at 1060; Shapley, 766 F.2d at 407.  Accordingly, there is no genuine dispute of material fact as to whether Defendant Adya acted with deliberate indifference to Plaintiff's serious medical needs by ignoring his medication allergy or delaying his pain medication.

**C.     Dr. Lee**

Plaintiff alleges that Defendant Lee acted with deliberate indifference to his serious medical needs by failing to intervene as a supervisor and offer treatment after becoming personally aware of Plaintiff's injury.  (Compl. at 4.)  This claim also fails to survive summary judgment.

It is undisputed that Defendant Lee first became aware of Plaintiff's injury on March 24, 2005, when Defendant Lee, as SVSP's Health Care Manager, signed and concurred with Defendant Bowman's denial of Plaintiff's 602 second level review appeal.  (Lee Decl. ¶ 3.)  Plaintiff further alleges that Defendant Lee spoke to Plaintiff over the phone around this time regarding Plaintiff's allergy to pain medication and status of his 602 appeal.  (Pl.'s Aff. Ex. D ¶ 1.)  During the conversation, Defendant Lee assured Plaintiff that he would address Plaintiff's concerns.[7]  (Pl.'s Aff. Ex. D ¶ 1.)

As discussed above, a supervisor "is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them."  Taylor, 880 F.2d at 1045.  Furthermore, a supervisor cannot be held liable for an Eighth Amendment violation in the absence of an underlying constitutional violation by his subordinates.  Jackson, 268 F.3d at 654.

The Court construes the facts in the light most favorable to Plaintiff and finds that the record supports Plaintiff's assertion that Defendant Lee could be held liable in his supervisory capacity because he had knowledge of the alleged violations, and participated in Plaintiff's treatment.  See

---

[7]  As noted earlier, Defendants neither confirm nor deny this conversation.  Rather, Defendant Lee posits that he has "no independent recollection" of Plaintiff's file.  (Defs.' Opp'n to Mot. to Compel at 5.)

**United States District Court**
For the Northern District of California

Taylor, 880 F.2d at 1045.  However, as discussed above, the Court has not found any Eighth Amendment violations in the actions of his subordinates, Defendants Bowman and Adya, based on their treatment of Plaintiff's injury.  Therefore, Plaintiff has failed to produce sufficient evidence regarding an essential element of his supervisory liability claim against Defendant Lee, i.e., an underlying constitutional violation.

### D.    Conclusion

Viewing the evidence and the inferences drawn therefrom in the light most favorable to Plaintiff, no reasonable trier of fact could reach the conclusion that Bowman, Adya or Lees acted with deliberate indifference to Plaintiff's serious medical needs.  Accordingly Defendants' motion for summary judgment (Docket No. 38) is GRANTED as to the deliberate indifference claim.

## III.    Motion to Compel/Rule 56(f) Motion

Also before the Court is Plaintiff's pending "Motion to Compel Response" in which Plaintiff requests Defendants Lee and Bowman to provide more specific answers to certain interrogatories. Specifically, he seeks additional information regarding the presence of Defendant Bowman in the clinic on November 17, 2004, and the nature of the treatment provided thereafter.  As to Defendant Lee, Plaintiff seeks information related to the general treatment of a broken finger.  The Court liberally construes Plaintiff's motion as a request under Federal Rule of Civil Procedure 56(f).  See Garrett v. San Francisco, 818 F.2d 1515, 1518 (9th Cir. 1987) (discovery motion was sufficient to raise the issue of whether plaintiff was entitled to relief under Rule 56(f)); Hancock v. Montgomery Ward Long Term Disability Trust, 787 F.2d 1302, 1306 n.1 (9th Cir. 1986) (pending motion to compel discovery was sufficient to raise Rule 56(f) consideration).

A Rule 56(f) motion requires the moving party to show: "(1) that they have set forth in affidavit form the specific facts that they hope to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are 'essential' to resist the summary judgment motion."  State of Cal., on Behalf of Cal. Dept. of Toxic Substances Control v. Campbell, 138 F.3d 772, 779 (9th Cir. 1998).  A proper Rule 56(f) motion must contain more than a list of desired documents; it must specify what particular facts those requested documents will reveal if obtained and why those facts are necessary to oppose the summary judgment motion effectively.  Continental

United States District Court
For the Northern District of California

Maritime v. Pacific Coast Metal Trades, 817 F.2d 1391, 1395 (9th Cir. 1987).  Considering that Plaintiff was able to file opposition to Defendants' motion for summary judgment without the information he now seeks, Plaintiff's Rule 56(f) motion is not well-taken.

From Defendant Bowman, Plaintiff wishes to explore the following: (1) Whether Defendant Bowman was on duty on November 17, 2004; (2) if on duty, where was he assigned; (3) a detailed description of any encounter with Plaintiff on that day; (4) any treatment plans ordered by Defendant Bowman for Plaintiff's broken finger; and (5) information regarding the delay between SVSP's receipt of Plaintiff's x-ray report and follow-up treatment.

Defendant Bowman responds to Plaintiff's enumerated requests for more information by referring to Plaintiff's medical record.  Defendant Bowman maintains that he has no independent recollection of Plaintiff, his injury, or treatment apart from what is documented therein.

The Court has been able to make a fully informed and final determination regarding Plaintiff's claim of deliberate indifference to his serious medical needs based on the facts provided in the medical record and Plaintiff's affidavits.  Specifically, with regards to Defendant Bowman, the Court has presumed that he was indeed present on November 17, 2004, and his interactions with Plaintiff on that date occurred as Plaintiff describes.  As discussed, even construing the evidence in a light most favorable to the Plaintiff, the Court finds that Defendant Bowman is entitled to summary judgment as a matter of law.  More specific answers to Plaintiff's interrogatories, insofar as they seek information readily available in the medical record, addressed by the Plaintiff in his affidavits, or beyond the recollection of Defendant Bowman, would not change the Court's determination.

From Defendant Lee, Plaintiff seeks the following information: (1) the type of treatment the Plaintiff received; and (2) what common medical procedure exists to prevent deformation resulting from a finger injury.

Defendant Lee answered the first question, as did Defendant Bowman, by referring to the Plaintiff's medical records.  As for the second question, regarding common practice amongst clinicians, Defendant Lee first refuses to answer because the question seeks a medical expert opinion, and later responds by indicating he has no knowledge of preventing deformation of a

broken finger specific to any course of treatment.[8]

The additional information Plaintiff seeks from Defendant Lee is not determinative for the purposes of summary judgment.  The treatment Plaintiff received -- x-rays, pain medication, and physical examination -- is well documented in the medical record presented by both parties.  The question regarding Plaintiff's treatment options however, as discussed above, would only be relevant if Plaintiff were able to present evidence that the course of treatment he received was medically unacceptable under the circumstances and that the treatment was chosen by Defendants in conscious disregard of an excessive risk to Plaintiff's health.  See Toguchi, 391 F.3d at 1058.  Here, Plaintiff seeks information that would not establish, as a matter of law, that the treatment he received amounted to deliberate indifference.

Finally, Plaintiff was able to file a timely opposition to the motion for summary judgment despite the fact that his pending Rule 56(f) motion had not been resolved.  In the meantime, the Court directed Defendants to file a response to Plaintiff's motion and allowed Plaintiff to file a reply to Defendants' response.  The Court finds that any further response to these interrogatories would not aid in Plaintiff's opposition to summary judgment.  Accordingly, Plaintiff's Rule 56(f) motion (Docket No. 31) is DENIED.

**IV.**   **State Tort Claims**

The remaining claims are based on state law.  The Court declines to exercise supplemental jurisdiction over any remaining state law claims now that the federal question claim has been dismissed.  See 28 U.S.C. § 1367(c)(3).  Therefore, this case will be remanded to state court.  See Swett v. Schenk, 792 F.2d 1447, 1450 (9th Cir. 1986) ("it is within the district court's discretion, once the basis for removal jurisdiction is dropped, whether to hear the rest of the action or remand it to the state court from which it was removed"); Plute v. Roadway Package System, Inc., 141 F. Supp. 2d 1005, 1007 (N.D. Cal. 2001) (court may remand sua sponte or on motion of a party).

---

[8]  The question regarding common medical procedures used to treat a broken finger was not addressed by Defendants in their opposition to Plaintiff's motion to compel, nor by Plaintiff in his reply.  However, as mentioned above, the Court finds this issue irrelevant because it was able to resolve Defendants' motion for summary judgment using the evidence provided in the record.

**United States District Court**
For the Northern District of California

**CONCLUSION**

In light of the foregoing,

1.    Defendants' motion for summary judgment (Docket No. 38) is GRANTED as to the deliberate indifference claim.

2.    Plaintiff's "Motion to Compel Response" (Docket No. 31), which has been construed as a Rule 56(f) motion, is DENIED.

3.    The action is REMANDED to the Monterey County Superior Court for further proceedings.

4.    The Clerk shall close the file, terminate all pending motions, and send the necessary materials to the Monterey County Superior Court for the remand.

5.    This Order terminates Docket Nos. 31 and 38.

IT IS SO ORDERED.

DATED: 9/18/09

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

FRED JACKSON,

        Plaintiff,

  v.

ROBERT BOWMAN et al,

        Defendant.

_____/

Case Number: CV07-00961 SBA

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on September 30, 2009, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Fred Jackson K46860
Delano State Prison
P.O. Box 5103
Delano, CA 93216

Dated: September 30, 2009

                              Richard W. Wieking, Clerk
                              By: LISA R CLARK, Deputy Clerk

**United States District Court**
For the Northern District of California